## Daugherty Estate

*Franklin L. Wright* and *Middleton, Blakeley & Richardson*, for accountants.

*Duane, Morris & Heckscher*, for exceptant.

KNIGHT, P. J., April 20, 1955.—The questions raised by the exceptions to the adjudication of Harold G. Knight, specially presiding, complain that the auditing judge erred in his adjudication in ruling that the net proceeds resulting from the sale of the fruit or citrus crop growing on Mr. Daugherty's citrus groves at the time of his death had been improperly entered in the

income account. Exceptants vigorously contend that such proceeds are income and that the account as reflecting such to be income was proper; that the auditing judge erred in concluding that the same constituted principal.

Frank Daugherty, decedent, died on November 1, 1951, and after making certain bequests in his will and codicil, devised and bequeathed the residue of his estate in trust to be divided into as many equal parts as there should survive him, his brother, Garrard Daugherty; his sister, Helen D. Hazelrigg, and his niece, Helen H. Stehlin. All in fact survived testator.

Item 7 of the will and codicil provides that the net income from one of the equal shares of residue held in trust shall be paid to each of the persons named above for life, with principal to be added to the remaining shares at the death of any income beneficiary. By the adjudication of December 6, 1954, these three trusts were consolidated into a single trust in accordance with section 992 of the Fiduciaries Act of 1949.

At the time of his death Mr. Daugherty owned orange and grapefruit groves in Polk County, Fla. By item 10(a) of his will he directed that any Florida citrus groves owned by him at his death should be sold by his executors whenever they should deem it advantageous to do so, but in no event later than five years after his death.

At the time of his death on November 1, 1951, a citrus crop was in the early stages of growth on the Florida trees. The Florida account shows that this fruit was not harvested and sold until some months subsequent to that; it may be referred to as the 1951-52 citrus crop. The Florida administrator accounted for all receipts from the sale of this fruit as income on the theory that the fruit represented the proceeds of the land realized after death.

We think the objections are meritorious; that the learned auditing judge erred in his adjudication in ruling that the net proceeds resulting from the sale of the fruit crop 1951-52 were principal. We rule that they are income.

The principal and income acts are of no help and, moreover, no Pennsylvania cases have been found which at all would be helpful on the question of this principal and income accounting. It must be kept clearly in mind that this is a question not of property law but of principal and income accounting and that in such situations agricultural crops in fiduciary accounting are considered income. Cf. Scott on Trusts, §233.1; A. L. I. Restatement of the Law of Trusts, §233, comment (*a*).

In those jurisdictions where the question has been considered the courts have concluded that fruit crops are *fructus industriales* in exactly the same manner as crops sown each year.

"It was formerly held that where 'the root or tree was perennial, living for a number of years, the fruit produced by it while growing was *fructus naturales*'. This doctrine now finds little support, and 'the correct test to apply is to ascertain whether the annual fruit is produced by the manual labor of man, such as necessary manurance or other industry'": Twin Falls Bank & Trust Co. v. Weinberg, 44 Idaho 332, 257 Pac. 31 (1927).

There is probably no fruit crop which would require more human attention than citrus, a fact which may be readily appreciated by the heavy expenditures recorded in the case at bar. In Haines City Citrus Growers Assn. v. Petteway, 107 Fla. 344, 145 So. 183 (1932) the lower court made the following pertinent observations:

"Growing citrus fruit crops, such as oranges, grapefruit and tangerines, which essentially owe their annual existence to cultivation and labor, including ferti-

lizing and spraying for control of insects and diseases which attack and injure the fruit, though products of perennial plants or trees, are chattels, while the trees themselves are part of the realty."

We agree, in light of the foregoing that, as the auditing judge, we erred in considering the proceeds of these citrus crops as principal, and that they are, and are now declared to be, income.

And now, April 20, 1955, the exceptions to the adjudication are sustained, and the adjudication, as modified by this opinion, is confirmed absolutely.